IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DORITA REYEN | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-15-1548 |
| | : | |
| | : | |
| JONES LANG LASALLE | : | |
| AMERICAS INC., ET AL. | : | |
| | : | |
| | : | |

## **MEMORANDUM**

The plaintiff, Dorita Reyen, has filed a diversity action sounding in negligence against Jones Lang Lasalle Americas, Inc. ("Jones Lang") and Megabus Northeast, LLC ("Megabus"). Her claims arise from injuries sustained when she "lost her balance and fell" on an escalator inside Union Station in Washington, D.C. (Compl. ¶¶ 3, 14, ECF No. 1). Now pending are separate motions for summary judgment filed by Jones Lang and Megabus. (Jones Lang Mot. Summ. J., ECF No. 19; Megabus Mot. Summ. J., ECF No. 20). Ms. Reyen opposed them, (Resp. Opp'n Mot. Summ. J., ECF No. 26), and Jones Lang replied, (Jones Lang Reply, ECF No. 27). No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, the court will grant both motions for summary judgment.

## **BACKGROUND**

Ms. Reyen has a disability that requires her to walk with a cane. (Jones Lang Mot. Summ. J. Ex. A, Reyen Dep. 84–85). On June 17, 2013, she purchased a bus ticket from Megabus in order to travel from her home near Syracuse, New York, to her sister's home in

Virginia on July 9, 2013. (Compl. ¶ 7; Reyen Dep. 16). Because her itinerary required her to change buses several times, Ms. Reyen notified Megabus of her disability in advance and advised Megabus that she would need help getting on and off buses and when removing her luggage from bus storage compartments. (Reyen Dep. 84, 129–30, 148–49). In response, Megabus indicated she would receive assistance getting from one bus to the next. (*Id.* 147–50).

On its way to Virginia, the bus on which Ms. Reyen traveled performed a scheduled stop at Union Station. (*Id.* 82–83). All passengers continuing to Virginia had to disembark, wait about five hours, and then board a different bus to continue the journey. (*Id.*). Once the bus parked on the Union Station bus deck,[1] the plaintiff disembarked, retrieved her luggage, and headed into Union Station to pass the time during the layover. (*Id.* 90–91). Ms. Reyen knew that, because she "had trouble even walking on flat floor," escalators were "dangerous" for her because they could cause her to fall and harm herself. (*Id.* 87–89). She thus sought to avoid them. After alighting on the bus deck, Ms. Reyen looked for an elevator to transport her down into Union Station but was unable to find one. (*Id.* 92, 94, 141, 156). For that reason, she felt forced to use an escalator to descend one level to the mezzanine level, (see *id.* 88, 145), although Ms. Reyen appears unsure if an elevator in fact existed that could have taken her into Union Station, (*see id.* 94, 141, 144–46).

Ms. Reyen fared no better within Union Station. After taking an escalator down to the mezzanine level (*id.* 93), she could not locate an elevator to take her down to the main level. Ms. Reyen does not dispute that several such elevators exist now. (*Id.* 105–06, 160; Jones Lang Mot. Summ. J. Ex. B, Polhemus Dep. ¶¶ 18-28, ECF No. 19-2). But on the day in question, the plaintiff claims an elevator between the mezzanine and main levels either did not exist, (Reyen

---

[1] Parties agree that Union Station has four levels. The uppermost is the bus deck, which is where buses like the one on which Ms. Reyen traveled enter and exit. The next level down is the mezzanine level, then the main level, and finally the lower level. (*See* Resp. Opp'n Mot. Summ. J. 6–7.)

Dep. 96, 98–99, 106, 144), or was not accessible, (*see id.* 108–111). In the latter case, construction materials on the mezzanine level may have obscured her ability to see and/or access one particular elevator, she claims. (*Id.*). The "area" where this elevator is now located was "blocked off from public access" by a "wall of plywood" that she could not get past on the day she suffered harm. (*Id.*).[2] The plaintiff thus felt compelled to risk an escalator for a second time in order to descend to the main level. (*Id.* 111).

Ms. Reyen located an elevator to take her down to the lower level and then back up to the main level. (*Id.* 103–105). On the main level, she again searched for an elevator to take her from the main level to the mezzanine level (from which she could access the bus deck), because she continued to believe one existed. (*See id.* 157–58). Sadly, she could not locate elevators or elevator signs, (*id.* 113, 121), perhaps because of construction materials, (*id.* 111–12). Again, the plaintiff does not know if there was an elevator she could not locate. (*Id.* 144–46).

Concluding she had no other choice, (*id.* 113), Ms. Reyen attempted to ride up an escalator from the main level to the mezzanine level. After taking one step on the escalator, unfortunately, she fell backwards, (*id.* 113), and sustained injuries, (*see id.* 33–51).

Ms. Reyen claims both defendants are liable in negligence. (Compl. ¶¶ 20–26). Jones Lang, the property manager of Union Station, (Jones Lang Mot. Summ. J., Mem. of Law 9, ECF No. 19-1; *see* Compl. ¶ 3), failed to ensure elevators were accessible, (Resp. Opp'n Mot. Summ.

---

[2] Jones Lang claims summary judgment is appropriate partly because Ms. Reyen's testimony regarding the "wall of plywood" focuses on her claim that this plywood precluded her from accessing one particular elevator on the mezzanine level. As Jones Lang notes, Ms. Reyen's testimony does not specifically explain why she could not access other elevators on that level. (*See* Jones Lang Reply 3). But Ms. Reyen claims plywood blocked access to the "area" where one particular elevator was located. Construing the facts in the light most favorable to her, this testimony could be interpreted to mean that plywood blocked access to other elevators too, meaning Ms. Reyen could not access any elevators between the mezzanine and main levels. (*See* Resp. Opp'n Mot. Summ. J. 8 n.3 ("[A]ll foot traffic from the Mezzanine Level to the Bus Deck . . . is funneled into a single corridor, which Ms. Reyen testified was blocked off by plywood due to construction.")).

J. 9–11), and thus negligently failed to provide safe passage between the bus deck and Union Station facilities, she claims, (Compl. ¶¶ 21–23). Ms. Reyen also claims Jones Lang negligently failed to provide adequate elevator signage. (*See id.* ¶¶ 12, 22; Resp. Opp'n Mot. Summ. J. 10).

Ms. Reyen claims Megabus negligently failed to safely deliver her to her destination, even though it stated she would receive assistance. (Compl. ¶¶ 25–26; Resp. Opp'n Mot. Summ. J. 11–12). But Ms. Reyen did not expect Megabus to escort her into Union Station, (Reyen Dep. 130, 144–46); spend time with her in Union Station, (*id.* 147, 149); or help her navigate from Union Station facilities to the next bus, (*id.* 139–40, 150-51). Megabus also negligently failed to help her once it was clear Jones Lang may fail in its duties, she claims. (Compl. ¶ 26).

## LEGAL STANDARD

This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. Ms. Reyen asserts, and the defendants do not dispute, that venue in this District is proper pursuant to 28 U.S.C. § 1391, because the defendants are Maryland residents under 28 U.S.C. § 1391(c)(2). (Compl. ¶¶ 3–6). As a federal court sitting in diversity, this court applies Maryland choice-of-law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941), which provide that the applicable substantive law is the law of the place of the harm, *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999). Here, this court thus applies the substantive law of the District of Columbia.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*,

673 F.3d 323, 330 (4th Cir. 2012)). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015).  At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

**ANALYSIS**

Megabus and Jones Lang have both moved for summary judgment on the negligence claims against them. This court will address their respective motions in turn.

1. Megabus

Ms. Reyen alleges Megabus is a common carrier that breached a duty of care owed to her. A plaintiff alleging negligence must prove "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the . . . injury." *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006) (quoting *District of Columbia v. Wilson*, 721 A.2d 591, 597 (D.C. 1998)). Failure to prove an applicable standard of care is thus fatal to a negligence claim. *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Under D.C. law, common carriers owe different standards of care to passengers and non-passengers. For passengers, common carriers generally must exercise reasonable care under the circumstances. *Washington Metro. Area Transit Auth. v. Jeanty*, 718 A.2d 172, 175 (D.C. 1998).

This includes the duty to protect passengers "against assault or interference with the peaceful completion of their journey," which means common carriers may be required to protect passengers from negligent acts of third parties in certain situations. *Washington Metro. Area Transit Auth. v. O'Neill*, 633 A.2d 834, 840 (D.C. 1993). By contrast, a common carrier owes no special duty of care to non-passengers. *McKethean v. Washington Metro. Area Transit Auth.*, 588 A.2d 708, 712 (D.C. 1991). With respect to bus operators in particular, no duty of care extends to non-passengers "other than a general duty to exercise ordinary care in the operation of its buses so as to avoid injuring the citizenry." *Id.*

Here, the applicable standard of care thus depends on whether Ms. Reyen was a "passenger" or "non-passenger" at the time of her injury. A "passenger" is one who has "placed himself in some substantial sense in the custody or under the control of the carrier." *Baker v. D.C. Transit System, Inc.*, 248 A.2d 829, 831 (D.C. 1969). Often, "passengers" are those who have boarded a common carrier or are in the process of boarding or alighting from one. *See D.C. Transit Sys., Inc. v. Smith*, 173 A.2d 216, 216 (D.C. 1961). If not onboard, an individual may be owed a special duty of care "if the property upon which an individual stands when injured is either owned by or under the control of the [common] carrier." *See McKethean*, 588 A.2d at 712.

Megabus does not dispute it is a common carrier. Even assuming it is, however, summary judgment in favor of Megabus is appropriate because Ms. Reyen was not a "passenger" at the time of her injury. At the time of her injury, Ms. Reyen was inside Union Station, not inside (or boarding or alighting from) the bus. Ms. Reyen has also presented no evidence suggesting that, while inside Union Station, she was "in the custody or under the control of" Megabus. Indeed, her deposition suggests the opposite. Before she fell, the plaintiff had alighted from the Megabus

vehicle on which she had arrived, entered Union Station, and spent approximately four hours inside. (Reyen Dep. 102). During that time, the plaintiff concedes she was not in the "custody" of Megabus. (*Id.* 137). Instead, she was "on [her] own" and "free to do whatever [she] chose to do," including leave Union Station, (*id.* 136–37). Ms. Reyen was unaware of any Megabus presence within Union Station, (*id.* 138), and had no interaction with Megabus inside Union Station, (*id.* 138–39). Finally, Ms. Reyen has presented no evidence that Megabus owned or controlled the area of Union Station where she suffered harm.

Because she was not a "passenger" at the time she suffered harm, and because Megabus did not own or control the area of Union Station where she suffered harm, Megabus had no special duty to protect Ms. Reyen from allegedly negligent third parties like Jones Lang. Indeed, at the time she was injured, Megabus owed her no duty other than "to exercise ordinary care in the operation of its buses." Ms. Reyen has thus failed to establish an applicable duty of care.

Alternatively, the plaintiff appears to argue that Megabus owed her a special duty of care because it had promised her that, in light of her disability, Megabus would provide certain assistance to her throughout her trip. (*See* Compl. ¶ 26; Resp. Opp'n Mot. Summ. J. 11–12). She thus suggests Megabus is liable in negligence because it "failed to live up to its promises." (Resp. Opp'n Mot. Summ. J. 11).

Voluntary undertakings may give rise to a special duty of care if 1) the undertaking increases the risk of harm, or 2) the harm is suffered because of reliance on the undertaking. *See Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097 (D.C. 1994); *Murphy v. Schwankhaus*, 924 A.2d 988, 993 (D.C. 2007); *see also* Restatement (Second) of Torts § 323. To the extent Megabus made promises that could constitute a "voluntary undertaking," they appear limited to

7

helping Ms. Reyen with boarding and alighting and with retrieving her luggage. (*See* Reyen Dep. 84, 129–30, 147–50). Regardless, Megabus assurances did not increase the risk of harm to the plaintiff beyond that already present. And any reliance on these assurances did not lead the plaintiff to suffer harm; Ms. Reyen knew in advance that she would receive "no assistance" from Megabus on her way from the lower level of Union Station back to the bus deck. (*Id.* 140).

For these reasons, summary judgment in favor of Megabus is appropriate.

2. Jones Lang

As the manager of Union Station, where Ms. Reyen suffered harm, Jones Lang does not dispute that it owed the plaintiff a duty of care. But it claims it did not breach this duty. Ms. Reyen, by contrast, makes three negligence claims against Jones Lang. She claims that Jones Lang 1) failed to post adequate signage related to elevators inside Union Station; 2) failed to provide safe ingress and egress from Union Station; and 3) failed to fulfill its duties to Ms. Reyen as a common carrier. (Compl. ¶¶ 20–23). These claims will be addressed in turn.

    A.  Elevator Signs

Ms. Reyen appears to claim Jones Lang was negligent because it failed to provide adequate signs within Union Station indicating the location of elevators and how Union Station patrons could receive assistance if elevators were not functional. (*See* Compl. ¶¶ 12, 22; Resp. Opp'n Mot. Summ. J. 9–10).[3] This negligence claim fails because Ms. Reyen has not established the applicable standard of care through the introduction of expert testimony. *See Flax v.*

---

[3] Ms. Reyen initially alleged Jones Lang was negligent because it "fail[ed] to provide adequate signs and personnel" to advise bus passengers "of the risks involved in using" Union Station facilities. (Compl. ¶ 22). She subsequently suggested her claim with respect to signs centers on the fact that Jones Lang did not ensure elevator signs were present within Union Station, which caused her to be unable to locate any elevators that were available on the day in question and thus forced her to take the escalator. (*See* Resp. Opp'n Mot. Summ. J. 9–10). This court focuses on the latter formulation here, although the result is the same regardless.

*Schertler*, 935 A.2d 1091, 1106–07 (D.C. 2007) (upholding summary judgment granted to the defendant because the plaintiff failed to provide expert testimony).

The plaintiff in a negligence action must prove the applicable standard of care. *Levy v. Schnabel Foundation Co.*, 584 A.2d 1251, 1255 (D.C. 1991). To do so, the plaintiff must provide expert testimony "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson," *District of Columbia v. Arnold & Porter,* 756 A.2d 427, 433 (D.C. 2000) (citations omitted), although no such testimony is needed if the subject matter is "within the realm of common knowledge and everyday experience." *Id.* The "general rule" is that expert testimony is required, *District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995), and this general rule applies broadly, *see Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) ("The D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge."). Expert testimony is often necessary in cases involving safety issues*, see Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014), unless the case relates to an "obvious hazard," *see Wise v. United States*, 145 F. Supp. 3d 53, 61 (D.D.C. 2015).

Jones Lang introduced evidence that signs indicating the location of elevators are "clearly displayed" within Union Station and that all signage complies with requirements set forth under the Americans with Disabilities Act ("ADA"). (Polhemus Dep. ¶¶ 28–32). Ms. Reyen claims the signage was inadequate because she was unable to locate any elevator signs. (*See* Reyen Dep. 113, 121, 161–62). But even if no elevator signs were visible to her, this claim fails because expert testimony is required to establish the standard of care; whether a lack of, or the particular placement of, elevator signs amounts to negligence is a safety issue foreign to "common

knowledge and everyday experience." *See District of Columbia v. Freeman*, 477 A.2d 713, 719–20 (D.C. 1984) (expert testimony needed to establish whether a painted crosswalk was sufficient to render particular intersection reasonably safe); *Briggs*, 481 F.3d at 846 (expert testimony needed to establish if lighting was adequate).

B. Access to Elevators

The plaintiff claims she was forced to take an escalator on the day in question because there were no accessible elevators between the main and mezzanine levels. According to Ms. Reyen, Jones Lang had a duty to use reasonable care to "keep the premises safe." (Compl. ¶ 21). Jones Lang breached that duty, she claims, by failing to provide accessible elevators, (Resp. Opp'n Mot. Summ. J. 9–10), and thus failing "to provide safe ingress and egress from the areas in which buses arrived" to facilities within Union Station. (Compl. ¶ 22). No expert testimony is needed to establish this duty of care because it is "common sense" that a lack of accessible elevators constitutes negligence in this context, she claims. (Resp. Opp'n Mot. Summ. J. 10). Ms. Reyen also appears to suggest that even if expert testimony would otherwise be required to establish a standard of care, it is not required here because a lack of accessible elevators violates the ADA and thus constitutes negligence *per se*. (*See id.*).

Under D.C. law, "the applicable standard for determining whether an owner or occupier of land has exercised the proper level of care to a person lawfully upon his premises is reasonable care under all of the circumstances." *Night & Day Mgmt., LLC*, 101 A.3d at 1038. If negligence is predicated on a dangerous condition, a plaintiff must show the defendant had actual or constructive notice of that dangerous condition, *see Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015); *Croce v. Hall*, 657 A.2d 307, 310–11 (D.C. 1995), unless the

defendant was responsible for creating it, *see Croce*, 657 A.2d at 310 n.6. To prove constructive notice, a plaintiff "must present evidence that a dangerous condition existed for such a duration of time that had reasonable care been exercised the hazard would have been discovered," *Wilson v. Washington Metro. Area Transit Auth.,* 912 A.2d 1186, 1190 (D.C. 2006). The duration of the hazard is an important factor in establishing constructive notice, *id.*, such that proof a hazard existed for an undetermined period may be insufficient, *Wise*, 145 F. Supp. 3d at 66.

Jones Lang has presented evidence that multiple elevators were available and accessible on the day in question to transport Union Station patrons between the main and mezzanine levels. (Polhemus Dep. ¶¶ 18–28). Ms. Reyen claims these elevators were not accessible due to construction materials located on the mezzanine level. (Reyen Dep. 106–11.) Even if that were true, and even if the lack of accessible elevators made the premises dangerous, the plaintiff has failed to prove Jones Lang had notice of this allegedly dangerous condition. She does not allege actual notice and presents no evidence that Jones Lang either had constructive notice or was responsible for the construction materials that allegedly blocked access to every elevator on the mezzanine level. Even viewing the evidence in the light most favorable to Ms. Reyen, summary judgment is thus appropriate. *See Croce*, 657 A.2d at 312.

Moreover, Ms. Reyen has provided no expert testimony to support her claim that the premises were unsafe. Although personal use of elevators may be "within the realm of common knowledge and everyday experience," the question of whether, and how many, elevators are required for "safe ingress and egress" within a location like Union Station – even when escalators are available and accessible – is not. *See Freeman*, 477 A.2d at 719–20 (expert testimony needed to establish whether, in absence of stop sign, traffic light or crossing guard, a

painted crosswalk was sufficient to render particular intersection reasonably safe); *Hill v. Metro. African Methodist Episcopal Church*, 779 A.2d 906, 910 (D.C. 2001) (expert testimony needed to establish whether crowd control measures were sufficient). The alleged hazard here – the presence of escalators but not elevators – is not as obvious as "a large, uncovered vent in the wall of a parking garage," *see Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 75 (D.C. 2015), or "gap[s] between boards covering a trench on which pedestrians were expected to walk," *see Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425–26 (D.C. 2000).

An alleged violation of the ADA does not save this claim. Ms. Reyen claims the ADA requires Union Station to have accessible elevators and suggests violation of that requirement constitutes negligence. In certain circumstances, a statute may establish a duty of care, such that a plaintiff need not separately establish a duty of care through expert testimony. *See Night & Day Mgmt., LLC*, 101 A.3d at 1039–40 (discussing negligence *per se* cases). But even if violation of the ADA established a duty of care, Ms. Reyen still bears the burden of proving that the statute applies to her particular circumstances and that Jones Lang violated the statute. *See McNeil Pharm. v. Hawkins*, 686 A.2d 567, 582–83 (D.C. 1996) (When statutes provide the standard of care, "the plaintiff must also prove a deviation from the standard of care, *i.e.*, that the statutes were in fact violated."); *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 674 (D.C. 1983) ("The party relying upon the statutory standard must, at the outset, establish its applicability by showing that he is within the class of persons intended to be protected by it, and that the injury incurred resulted from the type of risk against which the statute was designed to protect."). Often, expert testimony is needed to discharge this burden. *See McNeil Pharm.*, 686 A.2d at 583 ("[T]his jurisdiction has required expert testimony to explain the applicability of

statutes where the statute is relied upon as establishing the standard of care."); *see also Owen v. United States*, 899 F. Supp. 2d. 71, 78 n.16 (D.D.C 2012) (granting summary judgment because, even assuming ADA created a standard of care, the plaintiff "offered no expert testimony regarding how that standard of care applies to the particular facts in this case and how any breach of such standard of care proximately caused the plaintiff's injury").

Even if Union Station lacked accessible elevators on the date in question, Ms. Reyen has not done enough to discharge her initial burden with respect to an alleged statutory violation.

C. Common Carrier

Ms. Reyen further claims Jones Lang is a "common carrier" because it is the "operator of an escalator and elevator" and thus had a duty "to employ the highest degree of care" for her safety. (*See* Compl. ¶ 21). Even if Jones Lang were a "common carrier" with respect to the escalators and elevators within Union Station, and even if Ms. Reyen were a "passenger" on an escalator at the time she fell and suffered harm, Ms. Reyen admits the Union Station escalators functioned normally on the day in question. (Reyen Dep. 109). Thus, it is unclear how Jones Lang failed to exercise reasonable care under the circumstances. *See Jeanty*, 718 A.2d at 175.

## CONCLUSION

In summary, as to Megabus there is no genuine dispute that there were elevators from the bus deck to the mezzanine level on July 9, 2013. Ms. Reyen, unfortunately, failed to observe them, nor did any Megabus employee direct her to them. Even if there were no elevators, however, it is undisputed that Ms. Reyen suffered no injury departing the bus or traveling from the bus to the food court on the lower level within Union Station.

As to Jones Lang, there is very little dispute that at least several elevators were available

between the main level and the mezzanine level on July 9, 2013. Even assuming that Ms. Reyen's testimony is sufficient to establish that all the elevators were blocked by construction on that date, the lack of expert testimony and proof of actual or constructive notice precludes her claims against Jones Lang.

Accordingly, it is not necessary to reach the issues of contributory negligence or assumption of the risk. For the reasons stated above, while the court is sympathetic to Ms. Reyen's circumstances and unfortunate injury, both motions for summary judgment must be granted.

A separate order follows.


September 7, 2016 /S/
Date Catherine C. Blake
United States District Judge